# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. SA CV 14-0715-DOC (RNB)          Date: September 14, 2017

Title: THOMAS HAROLD MACRAE V. HCR MANOR CARE SERVICES, LLC, ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [44]**

Before the Court is Defendant HCR Manor Care Services, LLC's ("Manor Care" or "Defendant") Motion to Dismiss ("Motion") (Dkt. 44). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

**I.  Background**

This putative class action comes back to the Court on remand from the Ninth Circuit.

On March 12, 2014, Plaintiff Thomas Harold MacRae ("Plaintiff" or "MacRae") brought suit in the Superior Court of California, Orange County. Notice of Removal (Dkt. 1) Ex. A. The case was removed to this Court on May 8, 2014. Plaintiff filed the operative complaint, the Second Amended Complaint ("SAC"), on November 12, 2014 (Dkt. 41).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 14-0715-DOC (RNB)                                        Date: September 14, 2017
                                                                                                                                Page 2

Motions to dismiss the SAC were filed separately by Manor Care Fountain Valley (Dkts. 44, 54 (amended)) and all of the other Defendants (Dkt. 45). On January 20, 2015, the Court granted the motions to dismiss, and dismissed Plaintiff's claims with prejudice for failure to state a claim (Dkt. 63).

Plaintiff appealed, and on May 30, 2017, the Ninth Circuit issued a memorandum ("Memo.") reversing this Court's decision and remanding the case for a ruling on Manor Care's argument that some of the parties named in the SAC are not proper defendants (Dkt. 66). The Ninth Circuit's mandate issued on June 21, 2017 (Dkt. 67).

Because it has been over two years since the instant Motion was briefed, the Court ordered supplemental briefing (Dkt. 70). Plaintiff filed a supplemental opposition ("Suppl. Opp'n") (Dkt. 71), and Defendant Manor Care filed a supplemental reply ("Suppl. Reply") (Dkt. 72).

**II.    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, the court need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1229 n.1 (9th Cir. 1995).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 14-0715-DOC (RNB)                    Date: September 14, 2017
                                                                                                                                Page 3

permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III. Discussion

Plaintiff was a resident of Manor Care's Fountain Valley facility ("Manor Care Fountain Valley") in October 2013. SAC ¶¶ 2, 24. He alleges that, in their admission agreement form, Defendants made false representations about the quality of their skilled nursing facilities, in order to "lure elderly residents (and their representatives) into agreeing to be admitted." *Id.* ¶¶ 93–94. Specifically, Plaintiff alleges that Manor Care Fountain Valley and six "sister facilities" were chronically understaffed. *See, e.g.*, *id.* ¶¶ 26, 29, 40.

In the operative complaint, the SAC, Plaintiff brings claims against seven individual defendants, Manor Care, Manor Care Fountain Valley, and the six "sister facilities:" Manor Care of Citrus Heights CA, LLC; Manor Care of Hemet CA, LLC; Manor Care of Palm Desert CA, LLC; Manor Care of Sunnyvale CA, LLC; Manor Care of Tice Valley CA, LLC; and Manor Care of Walnut Creek CA, LLC. *Id.* ¶¶ 7–14. Plaintiff brings two claims: (1) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1770 *et seq.*, against all Defendants; and (2) violation of California Health & Safety Code § 1430(b), against only Manor Care Fountain Valley and the sister facilities. *Id.* ¶¶ 91–106.

### A. Failure to State a Claim

The Ninth Circuit held that Plaintiff's SAC adequately stated a claim on which relief can be granted under both the CLRA and § 1430(b) against Defendant Manor Care Fountain Valley. Memo. ¶¶ 2, 3.

Now, the Court must address an argument that it has twice addressed in previous orders, but neglected to address in the order appealed to the Ninth Circuit: whether or not Plaintiff has standing to sue Defendants other than Manor Care Fountain Valley defendants. *See* Order, July 21, 2014 (Dkt. 25) at 6 (finding Plaintiff "lacks standing to assert claims on behalf of other patients at Manor Care Fountain Valley or any of the locations to which he was not admitted"); Order, Oct. 30, 2014 (Dkt. 36) at 12 (holding Plaintiff had "again not alleged sufficient information to establish standing" as to facilities other than Manor Care Fountain Valley, and dismissing claims against those facilities with prejudice).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 14-0715-DOC (RNB)                        Date: September 14, 2017
                                                                                                         Page 4

In the instant Motion, Defendant Manor Care argues that Plaintiff has once again failed to show that he has standing to sue Manor Care or the sister facilities, because he has failed to adequately plead any theory of derivative liability against those defendants. Mot. at 1.

### 1. Alter Ego Liability

#### a. Applicable Law

As an initial matter, the parties dispute which state's law the Court must apply in evaluating Plaintiff's alter ego liability allegations. The conflict of laws rules to be applied by a federal court must conform to those prevailing in the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). "Subject only to review by [the Supreme] Court on any federal question that may arise, [a state] is free to determine whether a given matter is to be governed by the law of the forum or some other law." *Id.* at 496–97.

"Where a statute dictates the choice-of-law, the court need not apply a common law choice-of-law analysis." *Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1128 (N.D. Cal. 2011) (citing *Barclays Discount Bank Ltd. v. Levy,* 743 F.2d 722, 725 (9th Cir. 1984)). Defendant argues that California Corporations Code § 17708.01 "provides a direct answer" to the question of what law applies to the determination of whether the sister facilities and Manor Care are subject to alter ego liability in this case. Mot. at 5.

Under § 17708.01,

> [t]he law of the state . . . under which a foreign limited liability company is formed governs all of the following:
>
> (1) The organization of the limited liability company, its internal affairs and the authority of its members and managers[; and]
>
> (2) The liability of a member as a member and a manager as a manager for debts, obligations, and other liabilities of the limited liability company.

Cal. Corp. Code § 17708.01(a).

Federal courts that have addressed this issue have found that this language encompasses the determination of an LLC's alter ego liability. *See Wehlage*, 821 F. Supp.

Case 8:14-cv-00715-DOC-RNB   Document 74   Filed 09/14/17   Page 5 of 12   Page ID #:1608

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 14-0715-DOC (RNB)                                   Date: September 14, 2017

Page 5

2d at 1128–29 (analyzing § 17708.01's similarly-worded predecessor, § 17450(a), and finding that alter ego liability is a matter of an LLC's internal affairs, because "even though alter ego liability involves law suits by third parties, it determines, based on the structure of the corporation, whether the shareholders are liable in lieu of an LLC, which is an internal affair"); *Nat'l Standard Finance LLC v. Physicians Hospital of Desert Cities LLC*, Case No. EDCV 13-0010-DTE, 2013 WL 12131185 (C.D. Cal. 2013) (relying on *Wehlage*'s reasoning to apply the law of California, the state of incorporation, to plaintiff's alter ego claim); *Boeing Company v. KB Yuzhnoye*, Case No. CV 13-0730-ABC-AJWx, 2014 WL 12601330, at *1 n.1 (C.D. Cal. 2014) (applying *Wehlage*'s reasoning to § 17708.01, and agreeing that "this statue encompasses alter ego liability" in part because otherwise, "an LLC could be subject to various states' conflicting laws concerns its internal affairs").

This Court agrees with the reasoning in *Wehlage*. While § 17708.01 makes no mention of the LLC's relationship to third parties, alter ego liability pierces the corporate veil and allows third parties to reach shareholders who are ordinarily protected from liability by virtue of the internal corporate structure. Applying the law of one state to an alter ego claim while applying the law of a different state to the "internal affairs" of a defendant LLC makes little sense and could impose conflicting demands on corporations.

Plaintiff protests that Defendant has waived its choice of law argument by failing to raise that argument in either of its two prior motions to dismiss. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citing *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)). Despite Defendant's oversight—it of course knew where it and the other Defendants were incorporated at the time of its first motion—the Court will apply the law as required by § 17708.01.

Accordingly, the Court will apply Delaware law to Plaintiff's alter ego claims against the sister facilities, which are all organized under Delaware law, and Ohio law to Plaintiff's alter ego claims against Manor Care, which is organized under Ohio law. *See* SAC Ex. 14.

### b.     Pleading Standard

The parties also disagree as to whether Plaintiff's alter ego claims must meet the pleading standard of Federal Rule of Civil Procedure 8, or that of Rule 9. Opp'n at 8–9; Suppl. Opp'n at 6; Reply at 8–9; Suppl. Reply at 2.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 14-0715-DOC (RNB)  Date: September 14, 2017
Page 6

     Rule 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA" when the CLRA claims are grounded in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–05 (9th Cir. 2003). Plaintiffs must allege "'what is false or misleading about a statement, and why it is false.'" *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id.* at 1103. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).[1]

     Here, Plaintiff's CLRA claim is grounded in fraud. *See* SAC ¶¶ 41–45, 47–52, 56, 61, 62, 71 n.7, 72, 84, 93, 94, 101. In ruling on Plaintiff's appeal, the Ninth Circuit found Plaintiff sufficiently pled his CLRA claim against Manor Care Fountain Valley, but did not specify which standard it applied. *See* Memo. ¶ 3. The Court finds that Rule 9(b)'s particularity requirement applies to Plaintiff's CLRA claim against Manor Care and the sister facilities.

     Although fraud is not a necessary element of a CLRA claim,

> a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct. A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citations omitted).

---

[1] However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA CV 14-0715-DOC (RNB) | Date: September 14, 2017 |
| | Page 7 |

Plaintiff's § 1430(b) claim, a straightforward claim for violation of California's Health & Safety Code, is subject to Rule 8's pleading requirements, as it is not grounded in fraud. *See* SAC ¶¶ 102–06.

### c. Whether Plaintiff Sufficiently Pleads Alter Ego Liability of Sister Facilities

Plaintiff brings two claims against the sister facilities: (1) violation of the CLRA, and (2) violation of California Health & Safety Code § 1430(b). SAC ¶¶ 91–106. The parties appear to agree that as to the sister facilities, both of these claims are premised on an alter ego theory of liability.

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183–84 (Del. Ch. 1999) (quoting *Harco Nat. Ins. Co. v. Green Farms*, C.A. No. 1131, 1989 WL 110537, at *9–10 (Del. Ch. 1989)). The corporate form will be pierced only in the "exceptional case." *Winner Acceptance Corp. v. Return on Capital Corp.*, No. CIV.A. 3088-VP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008) (citation omitted).

"In order to state a cognizable claim to pierce the corporate veil of [an entity], plaintiffs must allege facts that, if taken as true, demonstrate the Officers' and/or the Parents' complete domination and control" of the entity. *Id.* (citing *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989)). Specifically, "[t]he degree of control required to pierce the veil is 'exclusive domination and control to the point that [the entity] no longer has legal or independent significance of its own.'" *Id.* (quoting *Hart Holding Co. v. Drexel Burnham Lambert, Inc.*, C.A. No. 11514, 1992 WL 127567, at *26 (Del. Ch. 1992)). When deciding whether to finding alter ago, courts consider the following factors, none of which are dominant:

> (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; or (5) whether, in general, the company simply functioned as a facade for the controlling shareholder. Delaware courts also must find an element of fraud to pierce the corporate veil.

*Id.* (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SA CV 14-0715-DOC (RNB)                            Date: September 14, 2017
                                                                                                                            Page 8

In addition, "piercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.' Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184 (quoting *Outokumpu Eng'g Enter., Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 (Del. 1996)). "[T]he requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim." *EBG Holdings LLC v. Vredezicht's Gravenhage*, No. CIV.A. 3184-VCP, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008) (citing *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989); *Sears, Roebuck & Co. v. Sears plc,* 744 F. Supp. 1297, 1305 (D. Del. 1990)).

Defendant argues that Plaintiff has utterly failed to show that Delaware law recognizes "horizontal alter ego"—that is, alter ego liability of one subsidiary for the actions of another subsidiary. Mot. at 10. Plaintiff, in turn, contends that the Third Circuit and Delaware courts have recognized alter ego liability between sister corporations, or "affiliates." Opp'n at 17.[2]

The Third Circuit has observed that "[a] corporation is . . . generally not liable for the acts of its sister corporation absent a showing that the sister corporation was an alter ego or acted as an agent." *Weston v. Progressive Commercial Holdings, Inc.*, No. CIV.A. 10-980, 2011 WL 231709, at *2 (D. Del. Jan. 24, 2011) (citing *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 141 (3d Cir. 1988)).

Plaintiff contends that, as to the sister facilities, he has alleged at least three of the alter ego factors. Opp'n at 17. He alleges Manor Care Fountain Valley and the sister facilities each paid Manor Care hundreds of thousands of dollars for "home office costs" during the June 2012 to May 2013 fiscal year, without adequate consideration in return. SAC ¶¶ 64–70. He alleges that Manor Care uses its control over Manor Care Fountain Valley and the sister facilities to siphon off their assets. *Id.* ¶ 72. He also alleges that there is "a unity of interest and ownership" between Manor Care, Manor Care Fountain Valley, and the sister facilities because they "maintain the same office and corporate headquarters." *Id.* ¶ 73. Finally, he alleges that Manor Care "exert[s] total and consistent operational control over each of the defendant facilities such that the independent facility defendants are merely alter-egos" of Manor Care, *id.* ¶ 7, and that Manor Care "fail[ed] to recognize the corporate uniqueness and independence of its subsidiaries." *Id.* ¶ 56.

These allegations go toward whether Manor Care, the alleged parent company, is the alter ego of the subsidiary facilities, not whether the sister facilities are alter egos of

---

[2] Plaintiff's supplemental opposition addresses only California law.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 14-0715-DOC (RNB)                                           Date: September 14, 2017
                                                                                                                                                           Page 9

each other. Plaintiff does not allege that the sister facilities have or had any control at all over Manor Care Fountain Valley, much less the "exclusive domination and control" required to show alter ego liability. In addition, among other problems, Plaintiff has not alleged that the sister facilities "exist for no other purpose than as a vehicle for fraud." *See Wallace*, 752 A.2d at 1184. "The fact that two corporations are sisters does not . . . automatically permit an inference of control." *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986); *see also Weston*, 2011 WL 231709, at *3 ("Simply because all the defendant companies are somehow affiliated with one another is not sufficient.").

Because Plaintiff has failed to plead facts sufficient to establish the alter ego liability of the sister facilities under Delaware law, Plaintiff's CLRA and § 1430(b) against the sister facilities are DISMISSED.

### d.       Alter Ego Liability of Manor Care

Defendant argues that Plaintiff's alter ego allegations again Manor Care, the alleged parent company, also fail. Mot. at 12–15. As discussed above, the Court will apply Ohio law to Plaintiff's alter ego allegations against Manor Care.

Under Ohio law, a court may disregard the corporate form when the plaintiff shows the following:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Ohio Edison Co. v. Frontier N. Inc.*, No. 5:14CV321, 2014 WL 6389564, at *9 (N.D. Ohio Nov. 14, 2014) (quoting *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos.*, Inc., 617 N.E.2d 1075, 1086 (Ohio 1993)).

Under the first prong of the *Belvedere* analysis, courts look at whether (1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (citing *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05 CV 2205, 2006 WL 2225821, *6 (N.D. Ohio Aug.2,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 14-0715-DOC (RNB)                                 Date: September 14, 2017

                                                                                                                 Page 10

2006) (citing *LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 689 (Ohio App. 6th Dist. 1991))).

The Ohio Supreme Court subsequently modified the second prong of *Belvedere*, which now requires that a plaintiff "demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 545 (Ohio 2008). Despite crafting this "limited expansion" of the application of the second prong, the Ohio Supreme Court cautioned courts to "apply [the second prong] cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct."[3] *Id.*

"[M]ere control over a corporation is not in itself a sufficient basis for shareholder liability." *Belvedere*, 617 N.E.2d at 1086; *see also Kinn v. HCR ManorCare*, 998 N.E.2d 852, 864 (Ohio App. 6th Dist. 2013) (evidence that parent exerted some control over subsidiary's operations was insufficient to show subsidiary was a mere instrumentality of the parent).

Plaintiff alleges that the defendant facilities are "wholly-owned subsidiaries" of Manor Care. SAC ¶ 7. Defendant insists that Manor Care has absolutely no ownership interest in any of the sister facilities or Manor Care Fountain Valley. Mot. at 12. Manor Care's Vice President, Controller, and Director of Tax has filed a declaration reiterating that fact, and stating that HCR IV Healthcare, LLC is the sole member of each of the defendant facilities. Declaration of Kathryn S. Hoops ("Hoops Decl.") (Dkt. 44-1) ¶¶ 2, 3. Rather than addressing Defendant's argument, Plaintiff argues that the "identical equitable ownership" of the defendant facilities "militate[s] in favor of application" of alter ego liability under Ohio law. Opp'n at 14. Plaintiff cites to the Hoops Declaration's statement that the facilities are wholly owned by HCR IV Healthcare, LLC. This admission would weigh toward alter ego liability if HCR IV Healthcare, LLC was a defendant in this case. It is not.

Plaintiff has more carefully laid out his alter ego theory against Manor Care as to other considerations under the first *Belvedere* factor. He alleges that there is a "Corporate Services Agreement" between Manor Care and the defendant facilities that sets forth how much each facility must pay Manor Care for services Manor Care provides to the facilities. SAC ¶ 61. Plaintiff has alleged that each of the defendant facilities paid Manor Care hundreds of thousands of dollars for "home office costs" during the June 2012 to May 2013 fiscal year, without adequate consideration in return. *Id.* ¶¶ 64–70. He alleges

---

[3] In this case, Defendants are all LLCs, SAC ¶¶ 7–14, and appear to each have one "member" or owner. Declaration of Kathryn S. Hoops ("Hoops Decl.") (Dkt. 44-1) ¶¶ 2, 3. That member or owner would thus be the "shareholder" under these rules.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 14-0715-DOC (RNB)                                            Date: September 14, 2017
                                                                                                                            Page 11

that these costs were actually fraudulently diverted and/or siphoned from the facilities, making the facilities "essentially empty shells." *Id.* ¶¶ 61, 63, 72.

Plaintiff also alleges that the Corporate Service Agreement gives Manor Care control over "virtually every aspect of the operation and management" of the facilities. *Id.* ¶ 62. Specifically, he alleges that Manor Care and the defendant facilities "maintain the same office and corporate headquarters." *Id.* ¶ 73. He alleges that Manor Care "exert[s] total and consistent operational control over each of the defendant facilities such that the independent facility defendants are merely alter-egos" of Manor Care, *id.* ¶ 7, and that Manor Care "fail[ed] to recognize the corporate uniqueness and independence of its subsidiaries." *Id.* ¶ 56.

As to the second and third *Belvedere* factors, Plaintiff repeatedly alleges that the relationship between Manor Care and the defendant facilities is fraudulent or a sham, and that the fraudulent nature of the relationship led directly to the harm Plaintiff alleges in this case. *See id.* ¶¶ 41–45, 47–52, 56, 61, 62, 71 n.7, 72, 84, 93, 94, 101. Specifically, he alleges that Manor Care, in exerting complete control over the defendant facilities, siphoned fees and funds from the facilities that should have been earmarked for providing care to residents in accordance with the facility's obligations under the California Health & Safety Code. *See id.* ¶¶ 61, 63.

The Court finds that, at the motion to dismiss stage, Plaintiff has plead the "who, what, when, where, and how" of the fraudulent activity that forms the basis of his alter ego liability theory against Manor Care. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Defendant's Motion is therefore DENIED as to Plaintiff's CLRA claim against Manor Care.

### 2.      Agency Liability of Manor Care and/or Sister Facilities

In its Order Granting Defendants' Motion to Dismiss First Amended Complaint, the Court held that Plaintiff failed to plead sufficient facts to support liability based on an agency theory. Order, Oct. 30, 2014 at 12 (finding allegations to be "conclusory and insufficient"). Plaintiff's SAC contains the same allegations as the dismissed FAC. *Compare* SAC ¶ 85 *with* FAC ¶ 63. By not amending allegations dismissed as inadequate, Plaintiff appears to have abandoned his agency theory. In any case, he has waived the issue. *See Stichting Pensioenfonds*, 802 F. Supp. 2d at 1132 ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 14-0715-DOC (RNB)                                     Date: September 14, 2017

Page 12

      **B.**     **Claims Against the Individual Defendants**

    Defendant argues that Plaintiff has abandoned his claims against the individual defendants, because he has yet again failed to mention them in the factual allegations of his complaint. Mot. at 15. Indeed, Plaintiff fails to address this point at all in his Opposition, and the Court therefore concludes that the claims against the individually-named defendants have been abandoned. The Court therefore DISMISSES the claims against the named individuals WITH PREJUDICE.

**IV.**     **Disposition**

    For the reasons explained above, the Court GRANTS Defendant's Motion IN PART and DENIES it IN PART.

    Plaintiff's claims against the individually-named defendants are DISMISSED WITH PREJUDICE. Plaintiff's CLRA and § 1430(b) claims against the six sister facilities are DISMISSED WITHOUT PREJUDICE.

    Plaintiff may file an amended complaint **on or before October 16, 2017**, if desired.

    The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                                Initials of Deputy Clerk: djg
CIVIL-GEN